2 So.2d 643

**DICKERSON v. DICKERSON.**

No. 35960.

April 28, 1941.

Rehearing Denied May 26, 1941.

**909**

Robert J. Newson, of Shreveport, for appellant.

Hunter & Hunter and Cook, Cook & Egan, all of Shreveport, for appellee.

ROGERS, Justice.

Plaintiff and defendant are brothers. The suit is one for the recovery of damages for alleged slander, for the cancellation of a "scrubber oil contract," and for intercepting a letter with a check and requiring plaintiff to sign a bill of sale in order to obtain the check.

Defendant in his answer denied plaintiff's allegation of slander, averred that the scrubber oil contract was subject to cancellation by either party, on ten days' written notice, averred that the check was contained in an envelope addressed to an oil company and represented the purchase of oil under the scrubber oil contract, and that plaintiff voluntarily signed the bill of sale in consideration of his indebtedness to the oil company.

The case was tried on the merits and resulted in a judgment rejecting plaintiff's

**910**

demand. Plaintiff has appealed from the judgment.

Plaintiff alleges that on fourteen different occasions and in the presence of various persons, during the summer of 1938, defendant slandered him by accusing him of stealing cattle from the H–D Ranch, situated in the Parish of Winn, and belonging to defendant. According to plaintiff's petition, the first accusation was made on June 12, 1938, in defendant's office in Shreveport, Louisiana, in the presence of Robert P. Hunter, an attorney. Mr. Hunter denied that any such accusation had been made in his presence.

Plaintiff alleges that on the 20th of June, 1938, defendant told M. M. Dickerson, their father, at defendant's residence in Caddo Parish, that defendant was going to put plaintiff in the penitentiary for stealing cattle off his ranch and was going to give Emma Beal, another employee of defendant, a $10,000 check to testify that plaintiff had stolen cattle from the defendant, and that defendant also told M. M. Dickerson to get plaintiff to plead guilty to stealing cattle, for the purpose of showing a loss in defendant's income tax and cancelling oil-drilling contracts with the plaintiff.

As shown by the record, M. M. Dickerson was 78 years of age at the time he testified. From 1924 to 1925, defendant had contributed to his support, and during the first of the year of 1938, he was living at defendant's home. He testified that on or about June 20, 1938, he was sitting in the yard of defendant's home and that the defendant came out of the house with a

glass of liquor in his hand and said, "Dad, I got that sorry son of yours and I am going to send him to the penitentiary" for stealing cattle; that defendant also stated that he was "going to throw a ten thousand dollar check down in front" of a man named Beal to testify that plaintiff had stolen his cattle; that defendant requested him to get plaintiff to plead guilty to stealing cattle, and that "he can go to the penitentiary and stay a year or two, two or three years, and maybe I can get him out." When asked if defendant gave any other reason for his desire to send plaintiff to the penitentiary, the witness answered, "no," except that "he (plaintiff) wasn't any good; no account." In response to questions propounded by plaintiff's counsel, the witness testified that about the third or fourth of June, he was in the garden of defendant "getting some Irish potatoes," and defendant came out to him and said, "I got him; got that sorry son of yours, and I am going to send him to the penitentiary" for stealing cattle. These dates and the alleged conversation of plaintiff's witness and the defendant are not set forth in the petition.

The witness further testified that on June 13, 1938, he went to the ranch in Winn Parish to promote public relations and that plaintiff had been made manager of the ranch operations at that time. It is inconceivable that on June 3 or 4, 1938, defendant made the statement attributed to him by his father and ten days later appointed plaintiff as manager of his ranch. If the witness erred with respect to this alleged conversation, it is fair to assume that he erred with respect to the other conversation which he claimed took place on June 20, 1938. The testimony of the witness was not corroborated and defendant denied all the statements attributed to him. The trial judge was not impressed by the testimony of this witness, nor are we.

Plaintiff alleges that about June 20, 1938, in the presence of Melvin Crawford, defendant accused him of stealing cattle. Crawford testified that during the year 1938, he had only one conversation with the defendant at defendant's office; that he could not fix the exact time and did not remember just what was said, except that he knew nothing was said to him about plaintiff stealing defendant's cattle. Defendant denied that he made any such statement to Crawford.

Plaintiff alleges that during the month of July, 1938, defendant accused him, in the presence of various persons, at various times, of stealing his cattle. They were E. L. Kelley, Ben Lemoine, Desoto Howell, H. L. Dickerson, Elige Franks and Jim Franks, James I. Smith, F. L. Dickerson, W. A. Lester, and Elmer Jones.

Kelley, who was employed as ranch foreman, was discharged by defendant in the latter part of September, 1938. He testified that in a conversation with him, defendant stated plaintiff had been stealing his cattle. However, his testimony is vague and uncertain and is not corroborated by any other witness. Defendant denied that he made the statement to Kelley. Lemoine denied that the defendant, in his presence, had accused plaintiff of stealing cattle. Desoto Howell was also employed by defend-

ant and discharged by him. He testified by deposition that on one occasion, in his presence, defendant accused plaintiff of stealing his cattle and that Robert P. Hunter was present. Both Hunter and the defendant denied that defendant had made any such statement.

H. L. Dickerson testified by deposition and also on the trial of the case. He testified that one night he was at defendant's house, but did not remember the date, and that defendant told him plaintiff was ruining him by stealing his cattle and that he was going to send plaintiff to the penitentiary. The witness stated that Robert P. Hunter was at the ranch, but was not in the room at the time of the alleged statement. The witness testified that he had not informed plaintiff of the statement and that he did not know how plaintiff found out about the accusation. The testimony of this witness is inconsistent in several important respects. Hunter testified that on July 8, 1938, he went to Winnfield with defendant to attend a banquet given in his honor by the rotary club of that town, and that H. L. Dickerson came to the ranch house on the next morning; that the witness was with defendant all the time at the ranch except during his visit to Desoto Howell; and that to his knowledge defendant did not have any private conversation with H. L. Dickerson. The latter said that the accusation was made at the time Hunter was at the ranch and Hunter's testimony shows that the conversation mentioned by the witness did not and could not have taken place. Defendant testified that he saw Dickerson the day following the banquet,

but denied having any private conversation with him and expressly denied that at that or any other time he had accused plaintiff of stealing his cattle. Plaintiff alleged that defendant, both at the ranch house and at the fishing camp near the ranch, told Elige Franks and Jim Franks that plaintiff had stolen $30,000 worth of cattle from him. The testimony of the Franks taken under deposition is to the effect that no accusations were made. They stated that defendant asked them whether they believed that plaintiff had stolen any of his cattle and they told him they didn't believe so, that defendant then said that he didn't accuse plaintiff of stealing the cattle, "but he believed that he knew where they were gone to." The testimony of the witnesses was contradicted by that of the defendant and his wife.

Plaintiff alleges that, on July 8, 1938, in the office of R. W. Oglesby in the Town of Winnfield, the defendant accused him of stealing cattle, in the presence of Oglesby, James I. Smith, an attorney, and Robert P. Hunter. Smith testified in substance that he was present at the meeting in the office of Judge Oglesby in July, 1938, there being present Judge Oglesby, Jack Oglesby, Heron Dickerson (defendant), Robert P. Hunter, and himself; that the purpose of the meeting was to discuss the program for the banquet to be given that night by the rotary club in honor of the defendant, the witness being chairman of the arrangement committee; and that plaintiff's name was not mentioned at the meeting, nor were any accusations made against him. Smith denied that defendant had accused plaintiff of

stealing cattle from him annd stated that the first he heard of the matter was a few days after the banquet when plaintiff asked the witness "if he had heard that Heron had accused him of stealing his cattle," and the witness replied in the negative, stating the first time he heard of it was when the plaintiff mentioned it to him. Smith's testimony is corroborated by that of Judge Oglesby, J. W. Capps, and Robert Hunter. Defendant also testified that he was present at the meeting, but he denied having accused plaintiff of stealing cattle and stated that plaintiff's name was not mentioned at the meeting at all.

Plaintiff alleged that in a speech delivered by defendant at the banquet given by the rotary club in his honor on July 8, 1938, defendant stated that he had had some 500 head of cattle stolen from him and that he believed it to be an inside job, and that the speech was reported in the Winnfield newspapers. In support of the allegation, plaintiff offered in evidence two newspapers published in Winn Parish. These newspapers show that defendant was a guest of the banquet given in his honor by the rotary club, but did not contain any reference to plaintiff and do not sustain plaintiff's charges. The testimony of a number of witnesses, who were present at the banquet, was given on behalf of the defendant, The testimony of these witnesses, as well as that of defendant himself, discloses that defendant, in his speech, made no accusations against plaintiff or any one else.

Plaintiff alleges that defendant told F. L. Dickerson, a brother of the parties, that plaintiff was stealing cattle from him. F. L. Dickerson testified at the trial on behalf of defendant. He denied the charge made by plaintiff. Defendant himself denied that he told their brother, F. L. Dickerson, that plaintiff had stolen his cattle.

W. A. Lester, a cattle buyer, was called as a witness by plaintiff and testified on the trial. He stated that as a cattle buyer he necessarily had many conversations with the defendant at various times, and that defendant did not at any time make any accusations to him against plaintiff.

Plaintiff offered Elmer Jones as a witness for the purpose of proving that defendant accused him of stealing cattle during the month of July, 1938, in the presence of E. L. Kelley, Ben Lemoine, Robert Hunter, and himself. Jones testified that he became acquainted with plaintiff about June 8, 1938 and that he was in the employ of defendant at the ranch from about June 8, 1938, to February, 1939. He denied that he heard, or had taken part in, any conversation in which the defendant had accused plaintiff of stealing cattle. The witness stated that he had heard defendant speak of the loss of his cattle, but that defendant did not accuse any one of stealing the cattle.

Plaintiff alleges in his first supplemental petition that defendant told Dr. A. V. Young, a veterinarian of Shreveport, that he was losing cattle on account of plaintiff and that he wanted Dr. Young to make a statement that plaintiff, or some one else, was poisoning his cattle. In his third supplemental petition, however, plaintiff alleges that defendant did not tell Dr. Young that plaintiff was poisoning his cattle, but that defendant endeavored to get Dr. Young

to sign a statement that some one was poisoning the cattle. Dr. Young testified, in substance, that he acted as veterinarian for defendant on various occasions and had performed autopsies on some of defendant's cattle. Plaintiff attempted to prove by the witness, without fixing any time whatever, the alleged accusations, but the trial judge sustained defendant's objections to any attempt to enlarge the pleadings and plaintiff's counsel admitted that the matter had no bearing on the case.

In Sterkx v. Sterkx, 138 La. 440, 70 So. 428, this court held, as shown by syllabus No. 3: "Suits for libel and slander partake more or less of the nature of a criminal accusation, and the preponderance of proof required for making out plaintiff's case should be greater than in ordinary civil actions."

It was incumbent upon plaintiff to make out his case by a preponderance of the testimony. As shown by the summary of the testimony, which we have given, he failed to do this. There is not a single circumstance disclosed by the record which corroborates the testimony of any of the witnesses produced by plaintiff.

Plaintiff's allegations that the scrubber oil contract was cancelled because of defendant's accusations that he was guilty of stealing defendant's cattle are not supported by the evidence. The record shows that defendant obtained this contract for plaintiff in order to do something for plaintiff at the termination of plaintiff's work as construction foreman at the plant of the Sabine Valley Gasoline Company, Inc. The

plaintiff received $40,000 out of the contract, which lasted longer than the parties contemplated. The contract provided that: "This agreement is subject to cancellation by either party by giving to the other 10 days written notice of their intention to do so." The Sabine Company, through defendant as its president, gave plaintiff ten days' written notice of the cancellation of the contract. The company had the right to do this, with or without any reason, and we fail to see wherein plaintiff can hold the defendant in damages because the company exercised its contract right.

On July 18, 1938, plaintiff executed a notarial act of sale, in which he transferred to the Sabine Valley Gasoline Company, Inc., certain equipment on oil leases in Gregg County, Texas. A few days prior thereto, the Sabine Company received from the Danciger Oil & Refineries, Inc., a check for $1,260.24 in payment for oil which had been purchased from plaintiff under the scrubber oil contract. The circumstances under which the check was received and the bill of sale was executed is explained in the testimony of C. E. Ray, Mrs. W. D. Wilson, and Robert P. Hunter. The plaintiff owed the Sabine Company $799, and Mr. Ray, acting for the Sabine Company, offered to take the equipment off plaintiff's hands in payment of the account. The testimony shows that some discussion took place between plaintiff and the representatives of the Sabine Company, but plaintiff finally agreed to transfer the equipment to the company in discharge of his indebtedness to the company, and the bill of sale was executed in accordance with the agreement.

The testimony satisfies us that the executing of the bill of sale by plaintiff was not a prerequisite for the delivery to him of the check of the Danciger Oil & Refineries, Inc.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.